UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. **10–1037** |
| | ) | |
| v. | ) | |
| | ) | |
| WORKING CHEMICAL SOLUTIONS, | ) | STIPULATED JUDGMENT AND ORDER |
| INC., a corporation, and ROBERT C. | ) | FOR INJUNCTION AND OTHER RELIEF |
| SMITH, individually and as the President | ) | |
| of the corporation, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

WHEREAS: Plaintiff, Federal Trade Commission ("FTC" or "Commission"), has commenced this action by filing the Complaint herein; Defendants Working Chemical Solutions, Inc. ("WCS") and Robert C. Smith (collectively "Defendants") have waived service of the Summons and Complaint; the parties have been represented by the attorney whose name appears hereafter; and the parties have agreed to settlement of this action upon the following terms and conditions, without adjudication of any issue of fact or law;

THEREFORE, on the joint motion of the parties, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## FINDINGS

1.  This Court has jurisdiction over the subject matter of this case and jurisdiction over all parties. Venue in the Western District of Arkansas is proper under 15 U.S.C. § 53(b) and under 28 U.S.C. §§ 1391(b) and (c) and 1395(a).

1

2. The Complaint states a claim upon which relief may be granted against Defendants under Sections 5(a)(1), 13(b), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1), 53(b), and 57b.

3. The acts and practices of Defendants were, and are, in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4. Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendants also waive any claims that they may have held under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order.

5. Each party shall bear its own costs and attorneys' fees.

6. Entry of this Order is in the public interest.

## DEFINITIONS

1. "Commerce" means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation.

2. "Competent and reliable scientific evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

3. "Corporate Defendant" means Working Chemical Solutions, Inc., also doing business as National Calibration and Validation Laboratories, and its successors and assigns.

2

4.    "Covered Product or Service" means any home insulation, any component thereof or additive thereto, and any product or any service for which Defendants make any claim about the R-value, K-value, thermal performance, energy costs, energy savings, energy consumption, insulation qualities, or energy-related efficacy.

5.    "Defendants" means the Individual Defendant and the Corporate Defendant, individually, collectively, or in any combination.

6.    "Home insulation" is any material mainly used to slow down heat flow for use in old or new homes, condominiums, cooperatives, apartments, modular homes, or mobile homes.

7.    "Individual Defendant" means Robert C. Smith.

8.    "K-value" is a measure of a material's thermal conductivity.

9.    "R-value" is a measure of a material's resistance to heat flow.

## I. PROHIBITED REPRESENTATIONS

**IT IS THEREFORE ORDERED** that Defendants; their officers, agents, servants, and employees, and attorneys; and all persons and entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the manufacturing, marketing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product or service, in or affecting commerce, are hereby permanently restrained and enjoined from making or assisting others in making any representation, directly or indirectly, expressly or by implication, including through the use of endorsements or trade names, about the R-value, K-value, thermal performance, energy costs, energy savings, energy consumption, insulation qualities, or energy-related efficacy of such product or service, unless:

3

(A)     The representation is true and not misleading; and

(B)     At the time the representation is made, Defendants possess and rely upon

competent and reliable scientific evidence that substantiates the representation.

## II. PROHIBITION ON PROVIDING MEANS AND INSTRUMENTALITIES

**IT IS FURTHER ORDERED** that Defendants; their officers, agents, servants,

employees, and attorneys; and all persons and entities in active concert or participation with

them who receive actual notice of this Order by personal service or otherwise, whether acting

directly or through any corporation, subsidiary, division, or other device, in connection with the

manufacturing, marketing, labeling, advertising, promotion, offering for sale, sale, distribution of

any product or service, in or affecting commerce, are hereby permanently restrained and

enjoined from providing to others the means and instrumentalities with which to make, directly

or indirectly, expressly or by implication, including through the use of endorsements or trade

names, any false or misleading representations of material fact. For the purposes of this Part,

"means and instrumentalities" shall mean any information, including, but not necessarily limited

to, any advertising, labeling, promotional, or purported substantiation materials, for use by trade

customers in their marketing of any covered product or service, in or affecting commerce.

## III. PROHIBITION ON VIOLATING THE R-VALUE RULE

**IT IS FURTHER ORDERED** that Defendants; their officers, agents, servants,

employees, and attorneys; and all persons and entities in active concert or participation with

them who receive actual notice of this Order by personal service or otherwise, whether acting

directly or through any corporation, subsidiary, division, or other device, in connection with the

manufacturing, marketing, labeling, advertising, promotion, offering for sale, sale, distribution or

4

installation of home insulation, in or affecting commerce, are hereby permanently restrained and enjoined from:

    (A)    Failing to base R-value claims only on tests conducted under methods set forth in 16 C.F.R. § 460.5;

    (B)    Failing to base R-value claims only on tests done either at the thickness specified or at a representative thickness, in accordance with the requirements listed in 16 C.F.R. § 460.6;

    (C)    Making "R-value per inch" claims without ensuring that actual test results prove that the R-values per inch of the product do not drop as the product gets thicker, in accordance with 16 C.F.R. § 460.20;

    (D)    Providing a range of "R-value per inch" claims without making the mandatory disclosures for such claims, as set forth in 16 C.F.R. § 460.20; and

    (E)    Failing to comply with any provision of the Commission's Trade Regulation Rule Concerning the Labeling and Advertising of Home Insulation (16 C.F.R. Part 460) ("R-value Rule" or the "Rule") or of the Rule as it may hereafter be amended. A copy of the Rule is attached hereto as "Appendix A" and incorporated herein as if fully set forth verbatim.

### IV. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

    (A)    Within ten (10) days of receipt of written notice from a representative of the Commission, Defendants each shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear

5

for deposition; and/or provide entry during normal business hours to any business
location in such Defendant's possession or direct or indirect control to inspect the
business operation;

(B)     In addition, the Commission is authorized to monitor compliance with this Order
by all other lawful means, including but not limited to the following:

    (1)     obtaining discovery from any person, without further leave of court, using
the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69;

    (2)     having their representatives pose as consumers and suppliers to any of the
Defendants, a Defendant's employees, or any other entity managed or
controlled in whole or in part by any of the Defendants, without the
necessity of identification or prior notice; and

(C)     Defendants shall permit representatives of the Commission to interview any
employer, consultant, independent contractor, representative, agent, or employee
who has agreed to such an interview, relating in any way to any conduct subject
to this Order.  The person interviewed may have counsel present.

***Provided, however,*** that nothing in this Order shall limit the Commission's lawful use of
compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-
1, to obtain any documentary material, tangible things, testimony, or information relevant
to unfair or deceptive acts or practices in or affecting commerce (within the meaning of
15 U.S.C. § 45(a)(1)).

## V.  COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this
Order may be monitored:

(A)   For a period of five (5) years from the date of entry of this Order,

    (1)   Defendant Robert C. Smith shall notify the Commission of the following:

        (a)   Any changes in his residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such change;

        (b)   Any changes in his employment status (including self-employment), and any change in his ownership in any business entity, within ten (10) days of the date of such change. Such notice shall include the name and address of each business that he is affiliated with, employed by, creates or forms, or performs services for; a statement of the nature of the business; and a statement of his duties and responsibilities in connection with the business or employment; and

        (c)   Any changes in his name or use of any aliases or fictitious names within ten (10) days of the date of such change;

    (2)   Defendants shall notify the Commission of any changes in structure for Defendant Working Chemical Solutions, Inc., or in any business entity that any Defendant directly or indirectly control(s), or has an ownership interest in, where such change(s) may affect compliance obligations arising under this Order, including but not limited to incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such change, *provided*

7

that, with respect to any proposed change in the business entity about
which a Defendant learns less than thirty (30) days prior to the date such
action is to take place, such Defendant shall notify the Commission as
soon as is practicable after obtaining such knowledge.

(B)     One hundred eighty (180) days after the date of entry of this Order and annually
thereafter for a period of five (5) years, Defendants each shall provide a written
report to the FTC, sworn to under penalty of perjury, setting forth in detail the
manner and form in which they have complied and are complying with this Order.
This report shall include, but not be limited to:

(1)     For Defendant Robert C. Smith:

(a)     His then-current residence address, mailing addresses, and
telephone numbers;

(b)     His then-current employment status (including self-employment),
including the name, addresses, and telephone numbers of each
business that such Defendant is affiliated with, employed by, or
performs services for; a detailed description of the nature of the
business; and a detailed description of such Defendant's duties and
responsibilities in connection with the business or employment;
and

(c)     Any other changes required to be reported under subparagraph A
of this Section.

8

(2)  For all Defendants:

    (a)  A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section titled "Distribution of Order;" and

    (b)  Any other changes required to be reported under subparagraph A of this Section.

(C)  Each Defendant shall notify the Commission of the filing of a bankruptcy petition by such Defendant within fifteen (15) days of filing.

(D)  For the purposes of this Order, Defendants shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier all reports and notifications required by this Order to the Commission, to the following address:

> Associate Director for Enforcement
> Bureau of Consumer Protection
> Federal Trade Commission
> 600 Pennsylvania Avenue, N.W.
> Washington, D.C. 20580
> Re: FTC v. Working Chemical Solutions, Inc., et al.,
> Civil Action No. _____.

*Provided* that, in lieu of overnight courier, Defendants may send such reports or notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Commission at:

DEBrief@ftc.gov.

(E)  For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with each Defendant.

9

## VI. RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Corporate Defendant, in connection with the manufacturing, marketing, labeling, advertising, promoting, offering for sale, sale, distribution or installation of any covered product or service, and Defendant Robert C. Smith for any business for which he is the majority owner or directly or indirectly controls, are hereby restrained and enjoined from failing to create and to retain the following records:

    (A)    All advertisements and promotional materials containing any representation subject to this Order, together with:

        (1)    All materials that were relied upon in disseminating the representation; and

        (2)    All tests, reports, studies, surveys, demonstrations, or other evidence in Defendants' possession or control that contradict, qualify, or call into question the representation, or the basis relied upon for the representation, including complaints and other communications with consumers or with governmental or consumer protection organizations;

    (B)    Copies of all labels and fact sheets for home insulation;

    (C)    Accounting records that reflect the cost of covered products or services sold, revenues generated, and the disbursement of such revenues;

    (D)    Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the

10

person commenced work; and the date and reason for the person's termination, if applicable;

(E)     Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of covered products or services purchased, and description of covered products or services purchased, to the extent such information is obtained in the ordinary course of business;

(F)     Complaints and refund requests (whether received directly or indirectly, such as through any third party) and any responses to those complaints or requests; and

(G)     All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order, required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order", and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## VII. DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of the Order as directed below:

(A)     **Corporate Defendant:** The Corporate Defendant must deliver a copy of this Order to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents, and representatives who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subparagraph A.2 of the Section titled "Compliance Reporting." For current personnel, delivery shall be within (5) days of service of

11

this Order upon the Corporate Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in Subparagraph A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

(B)     **Individual Defendant as Control Person:** For any business that Defendant Robert C. Smith controls, directly or indirectly, or in which he has a majority ownership interest, he must deliver a copy of this Order to (1) all principals, officers, directors, and managers of that business; (2) all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subparagraph A.2 of the Section titled "Compliance Reporting." For current personnel, delivery shall be within (5) days of service of this Order upon Robert C. Smith. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in Subparagraph A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

(C)     **Individual Defendant as employee or non-control person:** For any business where Defendant Robert C. Smith is not a controlling person of a business but otherwise engages in conduct related to the subject matter of this Order, Robert C.

12

Smith must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

(D)     Defendants must secure a signed and dated statement acknowledging receipt of the Order, within thirty days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

## VIII.  ACKNOWLEDGMENT OF RECEIPT OF ORDER

IT IS FURTHER ORDERED that each Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## IX.  RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for purposes of construction, modification and enforcement of this Order.

13

**JUDGMENT IS THEREFORE ENTERED** in favor of Plaintiff and against

Defendants Working Chemical Solutions, Inc. and Robert C. Smith, pursuant to all the terms and

conditions recited above.

**SO ORDERED** this ____/____ day of June, 2016

UNITED STATES DISTRICT JUDGE

U.S. DISTRICT **COURT**
WESTERN DIST **ARKANSAS**
FILED

**JUN 0 1 2010**

CHRIS R. JOHNSON, Clerk
By _____
Deputy Clerk

14

**STIPULATED AND AGREED TO:**

**FOR THE COMMISSION:**

JAMES A. KOHM,
Associate Director for Enforcement
ROBERT M. FRISBY,
Assistant Director for Enforcement

KORIN K. EWING, Attorney
Federal Trade Commission
Division of Enforcement
601 New Jersey Avenue, N.W.
Suite NJ-2122
Washington, D.C. 20001

202-326-3556, kewing@ftc.gov
202-326-2558 (fax)

**FOR THE DEFENDANTS:**

BURBANK DODSON & BARKER, PLLC
Attorney for Defendants Working Chemical
Solutions, Inc., and Robert C. Smith

GARY R. BURBANK, Attorney
Burbank Dodson & Barker, PLLC
215 N. Washington Ave.
El Dorado, AR 71730

870-862-8322,
bdandb@suddenlinkmail.com
870-862-5885 (fax)

ROBERT C. SMITH, individually and
as President of Working Chemical
Solutions, Inc.

15

**LOCAL COUNSEL FOR THE
COMMISSION:**

DEBORAH J. GROOM
United States Attorney
Arkansas Bar No. 80054
414 Parker Street
Fort Smith, AR 72901
Telephone: (479) 783-5125
Fax: (479) 785-2442
Email: debbie.groom@usdoj.gov

16

# Appendix  A

Federal Trade Commission

460.5

## PART 460—LABELING AND ADVERTISING OF HOME INSULATION

Sec.
460.1   What this regulation does.
460.2   What is home insulation.
460.3   Who is covered.
460.4   When the rules apply.
460.5   R-value tests.
460.6   "Representative thickness" testing.
460.7   Which test version to use.
460.8   R-value tolerances.
460.9   What test records you must keep.
460.10  New measurements must be made.
460.11  Rounding off R-values.
460.12  Labels.
460.13  Fact sheets.
460.14  How retailers must handle fact sheets.
460.15  How installers must handle fact sheets.
460.16  What new home sellers must tell new home buyers.
460.17  What installers must tell their customers.
460.18  Insulation ads.
460.19  Savings claims.
460.20  R-value per inch claims.
460.21  Government claims.
460.22  Tax claims.
460.23  Other laws, rules, and orders.
460.24  Stayed or invalid parts.
APPENDIX TO PART 460—EXEMPTIONS

AUTHORITY: 38 Stat. 717, as amended (15 U.S.C. 41 et seq.).

SOURCE: 44 FR 50242, Aug. 27, 1979, unless otherwise noted.

### § 460.1   What this regulation does.

This regulation deals with home insulation labels, fact sheets, ads, and other promotional materials in or affecting commerce, as "commerce" is defined in the Federal Trade Commission Act. If you are covered by this regulation, breaking any of the rules is an unfair and deceptive act or practice or an unfair method of competition under section 5 of that Act. You can be fined heavily (up to $11,000 plus an adjustment for inflation, under §1.98 of this chapter) each time you break a rule.

[70 FR 73214, May 31, 2005]

### § 460.2   What is home insulation.

Insulation is any material mainly used to slow down heat flow. It may be mineral or organic, fibrous, cellular, or reflective (aluminum foil). It may be in rigid, semirigid, flexible, or loose-fill form. Home insulation is for use in old

or new homes, condominiums, cooperatives, apartments, modular homes, or mobile homes. It does not include pipe insulation. It does not include any kind of duct insulation except for duct wrap.

### § 460.3   Who is covered.

You are covered by this regulation if you are a member of the home insulation industry. This includes individuals, firms, partnerships, and corporations. It includes manufacturers, distributors, franchisers, installers, retailers, utility companies, and trade associations. Advertisers and advertising agencies are also covered. So are labs doing tests for industry members. If you sell new homes to consumers, you are covered.

### § 460.4   When the rules apply.

You must follow these rules each time you import, manufacture, distribute, sell, install, promote, or label home insulation. You must follow them each time you prepare, approve, place, or pay for home insulation labels, fact sheets, ads, or other promotional materials for consumer use. You must also follow them each time you supply anyone covered by this regulation with written information that is to be used in labels, fact sheets, ads, or other promotional materials for consumer use. Testing labs must follow the rules unless the industry members tells them, in writing, that labels, fact sheets, ads, or other promotional materials for home insulation will not be based on the test results.

### 460.5   R-value tests.

R-value measures resistance to heat flow. R-values given in labels, fact sheets, ads, or other promotional materials must be based on tests done under the methods listed below. They were designed by the American Society of Testing and Materials (ASTM). The test methods are:

(a) All types of insulation except aluminum foil must be tested with ASTM C 177-04, "Standard Test Method for Steady-State Heat Flux Measurements and Thermal Transmission Properties by Means of the Guarded-Hot-Plate Apparatus;" ASTM C 518-04, "Standard Test Method for Steady-State Thermal Transmission Properties by Means of

the Heat Flow Meter Apparatus;" ASTM C 1363–97, "Standard Test Method for the Thermal Performance of Building Assemblies by Means of a Hot Box Apparatus" or ASTM C 1114–06, "Standard Test Method for Steady-State Thermal Transmission Properties by Means of the Thin-Heater Apparatus." This tests must be done at a mean temperature of 75 [degrees] Fahrenheit and with a temperature differential of 50 [degrees] Fahrenheit plus or minus 10 degrees Fahrenheit. The tests must be done on the insulation material alone (excluding any airspace). R-values ("thermal resistance") based upon heat flux measurements according to ASTM C 177–04 or ASTM C 518–04 must be reported only in accordance with the requirements and restrictions of ASTM C 1045–01, "Standard Practice for Calculating Thermal Transmission Properties from Steady-State Conditions."

(1) For polyurethane, polyisocyanurate, and extruded polystyrene, the tests must be done on samples that fully reflect the effect of aging on the product's R-value. To age the sample, follow the procedure in paragraph 1.5.4 of GSA Specification HH–I–530A, or another reliable procedure.

(2) For loose-fill cellulose, the tests must be done at the settled density determined under paragraph 8 of ASTM C 739–08, "Standard Specification for Cellulosic Fiber Loose-Fill Thermal Insulation."

(3) For loose-fill mineral wool, self-supported, spray-applied cellulose, and stabilized cellulose, the tests must be done on samples that fully reflect the effect of settling on the product's R-value.

(4) For self-supported spray-applied cellulose, the tests must be done at the density determined pursuant to ASTM C 1149–02, "Standard Specification for Self-Supported Spray Applied Cellulosic Thermal Insulation."

(5) For loose-fill insulations, the initial installed thickness for the product must be determined pursuant to ASTM C 1574–04, "Standard Test Method for Determination of Installed Thickness of Pneumatically Applied Loose-Fill Building Insulation," for R-values of 13, 19, 22, 30, 38, 49 and any other R-val-

ues provided on the product's label pursuant to § 460.12.

(b) Single sheet systems of aluminum foil must be tested with ASTM E 408–71 (Reapproved 2008), "Standard Test Methods for Total Normal Emittance of Surfaces Using Inspection-Meter Techniques," or ASTM C 1371–04a, "Standard Test Method for Determination of Emittance of Materials Near Room Temperature Using Portable Emissometers." This tests the emissivity of the foil—its power to radiate heat. To get the R-value for a specific emissivity level, air space, and direction of heat flow, use the tables in the most recent edition of the American Society of Heating, Refrigerating, and Air-Conditioning Engineers' (ASHRAE) Fundamentals Handbook, if the product is intended for applications that meet the conditions specified in the tables. You must use the R-value shown for 50 [degrees] Fahrenheit, with a temperature differential of 30 [degrees] Fahrenheit.

(c) Aluminum foil systems with more than one sheet, and single sheet systems of aluminum foil that are intended for applications that do not meet the conditions specified in the tables in the most recent edition of the ASHRAE Fundamentals Handbook, must be tested with ASTM C 1363–97, "Standard Test Method for the Thermal Performance of Building Assemblies by Means of a Hot Box Apparatus." In a test panel constructed according to ASTM C 1224–08, "Standard Specification for Reflective Insulation for Building Applications," and under the test conditions specified in ASTM C 1224–08. To get the R-value from the results of these tests, use the formula specified in ASTM C 1224–08.

(d) For insulation materials with foil facings, you must test the R-value of the material alone (excluding any air spaces) under the methods listed in paragraph (a) of this section. You can also determine the R-value of the material in conjunction with an air space. You can use one of two methods to do this:

(1) You can test the system, with its air space, under ASTM C 1363–97,

Federal Trade Commission

"Standard Test Method for the Thermal Performance of Building Assemblies by Means of a Hot Box Apparatus," which is incorporated by reference in paragraph (a) of this section. If you do this, you must follow the rules in paragraph (a) of this section on temperature, aging and settled density.

(2) You can add up the tested R-value of the material and the R-value of the air space. To get the R-value for the air space, you must follow the rules in paragraph (b) of this section.

(c) The standards listed above are incorporated by reference into this section. These incorporations by reference were approved by the Director of the Federal Register in accordance with 5 U.S.C. 552(a) and 1 CFR part 51. Copies may be inspected at the Federal Trade Commission, Consumer Response Center, Room 130, 600 Pennsylvania Avenue, NW., Washington, DC 20580, or at the National Archives and Records Administration (NARA). For information on the availability of this material at NARA, call (202) 741-6030, or go to: http://www.archives.gov/federal_register/code_of_federal_regulations/ibr_locations.html. Copies of materials and standards incorporated by reference may be obtained from the issuing organizations listed in this section.

(1) The American Society of Testing and Materials, 100 Barr Harbor Drive, P.O. Box 0700, West Conshohocken, PA 19428-2959.

(i) ASTM C 177-04, "Standard Test Method for Steady-State Heat Flux Measurements and Thermal Transmission Properties by Means of the Guarded-Hot-Plate Apparatus."

(ii) ASTM C 518-04, "Standard Test Method for Steady-State Thermal Transmission Properties by Means of the Heat Flow Meter Apparatus."

(iii) ASTM C 739-08, "Standard Specification for Cellulosic Fiber Loose-Fill Thermal Insulation."

(iv) ASTM C 1045-01, "Standard Practice for Calculating Thermal Transmission Properties from Steady-State Conditions."

(v) ASTM C 1114-00, "Standard Test Method for Steady-State Thermal Transmission Properties by Means of the Thin-Heater Apparatus."

§460.7

(vi) ASTM C 1149-02, "Standard Specification for Self-Supported Spray Applied Cellulosic Thermal Insulation."

(vii) ASTM C 1224-00, "Standard Specification for Reflective Insulation for Building Applications."

(viii) ASTM C 1363-97, "Standard Test Method for the Thermal Performance of Building Assemblies by Means of a Hot Box Apparatus."

(ix) ASTM C 1371-04a, "Standard Test Method for Determination of Emittance of Materials Near Room Temperature Using Portable Emissometers."

(x) ASTM C 1374-03, "Standard Test Method for Determination of Installed Thickness of Pneumatically Applied Loose-Fill Building Insulation."

(xi) ASTM E 408-71 (Reapproved 2008), "Standard Test Methods for Total Normal Emittance of Surfaces Using Inspection-Meter Techniques."

(2) U.S. General Services Administration (GSA), 1800 F Street, NW., Washington, DC 20405.

(i) GSA Specification HH-I-530A, Federal Specification, Insulation Board, Thermal (Urethane), November 22, 1971.

(ii) [Reserved]

[70 FR 31894, May 31, 2005]

§460.8   "Representative" thickness" testing.

All tests except aluminum foil tests must be done at a representative thickness for every thickness shown in a label, fact sheet, ad, or other promotional material. "Representative thickness" means a thickness at which the R-value per unit will vary no more than plus or minus 3% with increases in thickness. However, if the thickness shown in your label, fact sheet, ad, or promotional material is less than the representative thickness, then you can test the insulation at the thickness shown.

§460.7   Which test version to use.

Use the version of the ASTM test method that was in effect when this regulation was promulgated. If ASTM changes a test method, the new version will automatically replace the old one in these rules 90 days after ASTM first publishes the change. However, the Commission's staff or a person affected

531

§ 460.8

by the change can petition the Commission during the 90-day period not to adopt the change or to reopen the proceeding to consider it further.

§ 460.8   R-value tolerances.

If you are a manufacturer of home insulation, no individual specimen of the insulation you sell can have an R-value more than 10% below the R-value shown in a label, fact sheet, ad, or other promotional material for that insulation. If you are not a manufacturer, you can rely on the R-value data given to you by the manufacturer, unless you know or should know that the data is false or not based on the proper tests.

[70 FR 31916, May 31, 2005]

§ 460.9   What test records you must keep.

Manufacturers and testing labs must keep records of each item of information in the "Report" section of the ASTM test method that is used for a test. They must also keep the following records:

(a) The name and address of the testing lab that did each test.
(b) The date of each test.
(c) For manufacturers, the date each test report was received from a lab. For labs, the date each test report was sent to a manufacturer.
(d) For extruded polystyrene, polyurethane, and polyisocyanurate, the age (in days) of the specimen that was tested.
(e) For aluminum foil, the emissivity level that was found in the test.

Manufacturers who own their own testing labs need not keep records of the information in paragraph (c) of this section.

Keep these records for at least three years. If the documents show proof for your claims, the three years will begin again each time you make the claim. Federal Trade Commission staff members can check these records at any time, but they must give you reasonable notice first.

§ 460.10   How statements must be made.

All statements called for by this regulation must be made clearly and con-

16 CFR Ch. I (1-1-06 Edition)

spicuously. Among other things, you must follow the Commission's enforcement policy statement for clear and conspicuous disclosures in foreign language advertising and sales materials. 16 CFR 14.9.

[51 FR 13680, Mar. 22, 1989]

§ 460.11   Rounding off R-values.

R-values shown in labels, fact sheets, ads, or other promotional materials must be rounded to the nearest tenth. However, R-values of 10 or more may be rounded to the nearest whole number.

§ 460.12   Labels.

If you are a manufacturer, you must label all packages of your insulation. The labels must contain:

(a) The type of insulation.
(b) A chart showing these items:
(1) For batts and blankets of any type: the R-value, length, width, thickness, and square feet of insulation in the package.
(2) For all loose-fill insulation: the minimum settled thickness, initial installed thickness, maximum net coverage area, number of bags per 1,000 square feet, and minimum weight per square foot at R-values of 11, 13, 22, 26, 30, and 49. You must also give this information for any additional R-values you list on the chart. Labels for these products must state the minimum net weight of the insulation in the package. You must also provide information about the blowing machine and machine settings used to derive the initial installed thickness information.
(3) For boardstock: the R-value, length, width, and thickness of the boards in the package, and the square feet of insulation in the package.
(4) For aluminum foil: the number of foil sheets; the number and thickness of the air spaces; and the R-value provided by the system when the direction of heat flow is up, down, and horizontal. You can show the R-value for only one direction of heat flow if you clearly and conspicuously state that the foil can only be used in that application.
(5) For insulation materials with foil facings, you must follow the rule that applies to the material itself. For example, if you manufacture boardstock

532

with a coil facing, follow paragraph (b)(8) of this section. You can also show the R-value of the insulation when it is installed in conjunction with an air space. This is its "system R-value." If you do this, you must clearly and conspicuously state the conditions under which the system R-value can be attained.

(6) For air duct insulation: the R-value, length, width, thickness, and square feet of insulation in the package.

(c) The following statement: "R means resistance to heat flow. The higher the R-value, the greater the insulating power."

(d) If installation instructions are included on the label or with the package, add this statement: "To get the marked R-value, it is essential that this insulation be installed properly. If you do it yourself, follow the instructions carefully."

(e) If no instructions are included, add this statement: "To get the marked R-value, it is essential that this insulation be installed properly. If you do it yourself, get instructions and follow them carefully. Instructions do not come with this package."

(10 FR 22578, May 31, 2005)

§460.13 Fact sheets.

If you are a manufacturer, you must give retailers and installers fact sheets for the insulation products you sell to them. Each sheet must contain what is listed here. You can add any disclosures that are required by federal laws, regulations, rules, or orders. You can add any disclosures that are required by State or local laws, rules, and orders, unless they are inconsistent with the provisions of this regulation. Do not add anything else.

Each fact sheet must contain these items:

(a) The name and address of the manufacturer. It can also include a logo or other symbol that the manufacturer uses.

(b) A heading: "This is _____ insulation." Fill in the blank with the type and form of your insulation.

(c) The heading must be followed by a chart:

(1) If §460.13(b) requires a chart for your product's label, you must use that chart. For foamed-in-place insulations, you must show the R-value of your product at 3½ inches. You can also show R-values at other thicknesses.

(2) You can put the charts for similar products on the same fact sheet. For example, if you sell insulation boards or batts in three different thicknesses, you can put the label charts for all three products on one fact sheet. If you sell loose-fill insulation in two different bag sizes, you can put both coverage charts on one fact sheet, as long as you state which coverage chart applies to each bag size.

(d) For air duct insulation, the chart must be followed by this statement:

"The R-value of this insulation varies depending on how much it is compressed during installation."

(e) After the chart and any statement dealing with the specific type of insulation, ALL fact sheets must carry this statement, boxed, in 15-point type:

READ THIS BEFORE YOU BUY

What You Should Know About R-values

The chart shows the R-value of this insulation. R means resistance to heat flow. The higher the R-value, the greater the insulating power. Compare insulation R-values before you buy.

There are other factors to consider. The amount of insulation you need depends mainly on the climate you live in. Also, your fuel savings from insulation will depend upon the climate, the type and size of your house, the amount of insulation already in your house, and your fuel use patterns and family size. If you buy too much insulation, it will cost you more than what you'll save on fuel.

To get the marked R-value, it is essential that this insulation be installed properly.

(44 FR 50545, Aug. 27, 1979, as amended at 45 FR 78006, Oct. 17, 1980; 70 FR 31272, May 31, 2005)

§460.14 How retailers must handle fact sheets.

If you sell insulation to do-it-yourself customers, you must have fact sheets for the insulation products you sell. You must make the fact sheets available to your customers. You can decide how to do this, as long as your insulation customers are likely to notice them. For example, you can put

533

them in a display, and let customers take copies of them. You can keep them in a binder at a counter or service desk, and have a sign telling customers where the fact sheets are. You need not make the fact sheets available to customers if you display insulation packages on the sales floor where your insulation customers are likely to notice them and each individual insulation package offered for sale contains all package label and fact sheet disclosures required by §§460.12 and 460.13.

[70 FR 31774, May 31, 2005]

§460.15 How installers must handle fact sheets.

If you are an installer, you must have fact sheets for the insulation products you sell. Before customers agree to buy insulation from you, you must show them the fact sheet(s) for the type(s) of insulation they want. You can decide how to do this. For example, you can give each customer a copy of the fact sheet(s). You can keep the fact sheets in a binder, and show customers the binder before they agree to buy.

§460.16 What new home sellers must tell new home buyers.

If you are a new home seller, you must put the following information in every sales contract: The type, thickness, and R-value of the insulation that will be installed in each part of the house. There is an exception to this rule. If the buyer signs a sales contract before you know what type of insulation will be put in the house, or if there is a change in the contract, you can give the buyer a receipt stating this information as soon as you find out.

§460.17 What installers must tell their customers.

If you are an installer, you must give your customers a contract or receipt for the insulation you install. For all insulations except loose-fill and aluminum foil, the receipt must show the coverage area, thickness, and R-value of the insulation you installed. The receipt must be dated and signed by the installer. To figure out the R-value of the insulation, use the data that the manufacturer gives you. If you put insulation in more than one part of the house, put the data for each part on the receipt. You can do this on one receipt, as long as you do not add up the coverage areas or R-values for different parts of the house. Do not multiply the R-value for one inch by the number of inches you installed. For loose-fill, the receipt must show the coverage area, initial installed thickness, minimum settled thickness, R-value, and the number of bags used. For aluminum foil, the receipt must show the number and thickness of the air spaces, the direction of heat flow, and the R-value.

[70 FR 31776, May 31, 2005]

§460.18 Insulation ads.

(a) If your ad gives an R-value, you must give the type of insulation and the thickness needed to get that R-value. Also, add this statement explaining R-values: "The higher the R-value, the greater the insulating power. Ask your seller for the fact sheet on R-values."

(b) If your ad gives a price, you must give the type of insulation, the R-value at a specific thickness, the statement explaining R-values in paragraph (a) of this section, and the coverage area for that thickness. If you give the price per square foot, you do not have to give the coverage area.

(c) If your ad gives the thickness of your insulation, you must give its R-value at that thickness and the statement explaining R-values in paragraph (a) of this section.

(d) If your ad compares one type of insulation to another, the comparison must be based on the same coverage areas. You must give the R-value at a specific thickness for each insulation, and the statement explaining R-values in paragraph (a) of this section. If you give the price of each insulation, you must also give the coverage area for the price and thickness shown. However, if you give the price per square foot, you do not have to give the coverage area.

(e) The affirmative disclosure requirements in §460.18 do not apply to ads on television or radio.

[44 FR 50242, Aug. 27, 1979, as amended at 41 FR 39461, Oct. 20, 1980; 70 FR 31776, May 31, 2005]

Federal Trade Commission

§ 460.23

### § 460.19   Savings claims.

(a) If you say or imply in your ads, labels, or other promotional materials that insulation can cut fuel bills or fuel use, you must have a reasonable basis for the claim. For example, if you say that insulation can "slash" or "lower" fuel bills, or that insulation "saves money," you must have a reasonable basis for the claim. Also, if you say that insulation can "cut fuel use in half," or "lower fuel bills by 20%," you must have a reasonable basis for the claim.

(b) If you say or imply in your ads, labels, or other promotional materials that insulation can cut fuel bills or fuel use, you must make this statement about savings: "Savings vary. Find out why in the seller's fact sheet on R-values. Higher R-values mean greater insulating power."

(c) If you say or imply that a combination of products can cut fuel bills or use, you must have a reasonable basis for the claim. You must make the statement about savings in paragraph (b) of this section. Also, you must list the combination of products used. They may be two or more types of insulation; one or more other insulating product, like storm windows or siding; or insulation for two or more parts of the house, like the attic and walls. You must say how much of the savings came from each product or location. If you cannot give exact or approximate figures, you must give a ranking. For instance, if your ad says that insulation and storm doors combined to cut fuel use by 50%, you must say which one saved more.

(d) If your ad or other promotional material is covered by § 460.18 (a), (b), (c), or (d), and also makes a savings claim, you must follow the rules in §§ 460.18 and 460.18. However, you need not make the statement explaining R-value in § 460.18(a).

(e) Manufacturers are liable if they do not have a reasonable basis for their savings claims before the claim is made. If you are not a manufacturer, you are liable only if you know or should know that the manufacturer does not have a reasonable basis for the claim.

(f) Keep records of all data on savings claims for at least three years. For the records showing proof for claims, the three years will begin again each time you make the claim. Federal Trade Commission staff members can check these records at any time, but they must give you reasonable notice first.

(g) The affirmative disclosure requirements in § 460.19 do not apply to ads on television or radio.

[44 FR 50413, Aug. 27, 1979, as amended at 51 FR 13485, Oct. 20, 1986; 70 FR 31978, May 31, 2005]

### § 460.20   R-value per inch claims.

In labels, fact sheets, ads, or other promotional materials, do not give the R-value for one inch or the "R-value per inch" of your product. There are two exceptions:

(a) If an outstanding FTC Cease and Desist Order applies to you but differs from the rules given here, you can petition to amend the order.

(b) You can do this if actual test results prove that the R-values per inch of your product does not drop as it gets thicker.

You can list a range of R-value per inch, if you do, you must say exactly how much the R-value drops with greater thickness. You must also add this statement: "The R-value per inch of this insulation varies with thickness. The thicker the insulation, the lower the R-value per inch."

[44 FR 50463, Aug. 27, 1979, as amended at 70 FR 31978, May 31, 2005]

### § 460.21   Government claims.

Do not say or imply that a government agency uses, certifies, recommends, or otherwise favors your product unless it is true. Do not say or imply that your insulation complies with a governmental standard or specification unless it is true.

### § 460.22   Tax claims.

Do not say or imply that your product qualifies for a tax benefit unless it is true.

### § 460.23   Other laws, rules, and orders.

(a) If an outstanding FTC Cease and Desist Order applies to you but differs

535

§460.24

from the rules given here, you can petition to amend to order.

(b) State and local laws and regulations that are inconsistent with, or frustrate the purposes of, this regulation are preempted. However, a State or local government may petition the Commission, for good cause, to permit the enforcement of any part of a State or local law or regulation that would be preempted by this section.

(c) The Commission's three-day cooling-off rule stays in force.

[44 FR 50242, Aug. 27, 1979, as amended at 70 FR 31078, May 31, 2005]

§460.24  Stayed or invalid parts.

If any part of this regulation is stayed or held invalid, the rest of it will stay in force.

APPENDIX TO PART 460—EXEMPTIONS

Section 18(a)(2) of the Federal Trade Commission Act, 15 U.S.C. 57a(a)(2), authorizes the Commission to exempt a person or class of persons from all or part of a trade regulation rule if the Commission finds that application of the rule is not necessary to prevent the unfair or deceptive acts or practices to which the rule relates. In response to petitions from industry representatives, the Commission has granted exemptions from specific requirements of 16 CFR part 460 to certain classes of sellers. Some of these exemptions are conditioned upon the performance of alternative actions. The exemptions are limited to specific sections of part 460. All other requirements of part 460 apply to these sellers. The exemptions are summarized below. For an explanation of this scope and application of the exemptions, see the formal Commission decisions in the FEDERAL REGISTER cited at the end of each exemption.

(a) Manufacturers of particle insulation products that have an inverse relationship between R-values and density or weight per square foot are exempted from the requirements in §§460.18(b)(3) and 460.19(c)(1) that they disclose minimum weight per square foot for R-values listed on labels and fact sheets. This exemption is conditioned upon the alternative disclosure in labels and fact sheets of the maximum weight per square foot for each R-value required to be listed. 40 FR 52276 (1981).

(b) Manufacturers of rigid, flat-roof insulation products used in flat, built-up roofs are exempted from the requirements in §460.13 that they label these home insulation products. 46 FR 85180 (1981).

(c) New home sellers are exempted from:

(1) the requirement in §460.16(c) that they disclose the type and thickness of the insulation when they make a representation in an advertisement or other promotional material about the R-value of the insulation in a new home;

(2) the requirement that they disclose in an advertisement or other promotional material the R-value explanatory statement specified in §460.16(a) or the savings explanatory statement specified in §460.16(b), conditioned upon the new home sellers alternatively disclosing the appropriate explanatory statement in the sales contract along with the disclosures required by §460.16;

(3) the requirement that they make the disclosures specified in §460.16(c) if they claim that insulation along with other products is a new home, will cut fuel bills or fuel use; and

(4) the requirement that they include the references in fact sheets when they make disclosures the R-value explanatory statement or the savings claim explanatory statement under §460.16(a) or §460.16(b), respectively.

The exemptions for new home sellers also apply to home insulation sellers other than new home sellers when they participate with a new home seller to advertise and promote the sale of new homes, provided that the primary thrust of the advertisement or other promotional material is the promotion of new homes, and not the promotion of the insulation product. 49 FR 61183 (1982).

[51 FR 12061, Mar. 28, 1986]

886